UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI DOST SOROSH, | No.  1:26-cv-00409 DAD SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1).  For the reasons set forth below, the undersigned recommends that the petition be granted.

**I.      Factual and Procedural History**

**A.  Section 2241 Petition**

The following facts are from petitioner's § 2241 petition filed on January 17, 2026.  ECF No. 1.  Petitioner is an Afghan national and a medical doctor.  He practiced medicine at a hospital in Kabul and served as the Executive Manager and Principal of a private, coeducational school, also in Kabul.  ECF No. 1 at 2, ¶ 1.  Petitioner was threatened by the Taliban due to his leadership role at the school and resigned his position on January 14, 2022.  Id., ¶ 2.

Petitioner and his family came to a United States port of entry on January 12, 2025,

1

pursuant to a CBP appointment.  They were vetted and granted Humanitarian Parole into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) through January 11, 2027.  Id. at 2-3, ¶ 3; ECF No. 1-3 (Form I-94).  On or about January 12, 2025, respondents commenced removal proceedings against them under 8 U.S.C. § 1229a.  ECF No. 1 at 2-3, ¶ 3; id. at 15, ¶ 47.  Petitioner applied for asylum on April 11, 2025.  Respondents issued work authorization to petitioner.  Id. at 15, ¶¶ 48-50.

Petitioner was referred to the Intensive Supervision Appearance Program (ISAP) and diligently complied with every required check-in.  ECF No. 1 at 15, ¶ 51.  On October 23, 2025, petitioner went to his local ICE office for a regularly scheduled check-in.  ICE officers put petitioner in handcuffs and leg shackles and led him away to be detained.  The officers did not present him with a warrant, did not provide him a hearing at the time of his detention, and did provide notice of revocation of his parole as required by 8 C.F.R. § 212.5(e).  Id. at 13-14, ¶ 43; id. at 15, ¶¶ 52-53.  He is currently detained at the Mesa Verde Detention Center, within this judicial district.[1]

Petitioner raises two claims for relief: (1) A violation of the Fifth Amendment Right to Due Process; and (2) Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ("APA").  ECF No. 1 at 17-21, ¶¶ 60-73.  He seeks, *inter alia*, immediate release from custody and an order that respondents not re-detain without order of this court.  Id. at 21-22.

### B.  Respondents' Return/Answer

On January 21, 2026, the undersigned directed respondents to file an answer/return to the petition and "substantively address whether any provision of law or fact in this case would distinguish it from Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025)."  ECF No. 3.

Respondents filed a short response that reads in full:

> The Respondents respectfully argue that the Petitioner, by his own admission, is an "applicant for admission" who is then subject to mandatory detention by ICE

---

[1] Petitioner alleges he is detained at the Adelanto Detention Center.  Id. at 5, ¶ 14.  However, he names the Administrator of Mesa Verde as a respondent and the ICE Online Detainee Locator System shows him to be detained at Mesa Verde.

under 8 U.S.C. § 1225 et seq. <u>See</u>, generally, <u>Alonzo v. Noem et al.</u>, 1:25-cv-01519-WBS SCR at Dkt. 14 (E.D. Cal. Nov. 17, 2025); <u>Ramos v. Lyons et al.</u>, 2:25-cv-09785-SVW-AJR at Dkt. 8 (C.D. Cal. Nov. 12, 2025). He is not entitled to a bond hearing for these same reasons. ICE may also revoke an order of release at any time in its discretion. <u>See</u> 8 CFR § 236.1(c)(9).

For these reasons, the Court should dismiss or deny the Petitioner's petition for writ of habeas corpus. The Respondents submit the matter on this filing and do not request a hearing.

ECF No. 5 at 1.  Respondents add in that a footnote that this case is not "substantively distinguishable" from <u>Chavarria</u>, but that they "respectfully disagree with the statutory interpretation that was used in [that] case[] and believe that the interpretation set forth above is the correct interpretation." <u>Id.</u> at 1-2, n.1.

### C. Petitioner's Traverse/Reply

On reply, petitioner maintains that, as a result of respondents' cursory response, the facts in the petition are undisputed and must be accepted as true.  ECF No. 6 at 2.  He further argues that respondents' non-response constitutes a waiver of opposition to his Fifth Amendment and APA claims.  <u>Id.</u> at 2-4.  Finally, petitioner requests that, upon release, he not be subjected to an ankle monitor because that was not a condition of pre-detention supervision.  <u>Id.</u> at 4.

### DISCUSSION

### I.    Applicable Detention Statute

The statutory and regulatory framework governing petitioner's immigration proceedings, his release on supervision, and the subsequent revocation of parole is complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1057 (9th Cir. 2008).

Petitioner was granted humanitarian parole in January 2025 pursuant to 8 U.S.C. § 1182(d)(5)(A).  ECF No. 1-3.  This provision permits the government to temporarily release a noncitizen "for urgent humanitarian reasons or significant public benefit."  <u>Id.</u>  However, the parties disagree on what statute currently governs petitioners' detention.  Petitioner argues that his detention "remains unlawful *ab initio*, not pursuant to any statute."  ECF No. 1 at 17, ¶ 58.

3

Respondents argue petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225.  ECF No. 5 at 1.

Even assuming petitioner is subject to mandatory detention under § 1225(b), respondents do not address whether his release on humanitarian parole implicated a protected liberty interest. See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (noting applicants for admission may be released on humanitarian parole "regardless" of whether § 1225(b)(1) or § 1225(b)(2) authorizes their detention).  Ultimately, given that the due process analysis below would be the same even if petitioner is subject to a mandatory detention statute, the undersigned need not resolve this dispute.  See Chavarria, 2025 WL 3533606, at *5 n.3 (declining to address respondents' argument that petitioner is subject to mandatory detention after determining petitioner was released under § 1182(d)(5)(A) and is likely to succeed on the merits of due process claim).

**II.    Fifth Amendment Procedural Due Process**

**A. Petitioner Has a Constitutional Liberty Interest in Remaining on Parole**

Petitioner argues that respondents' revocation of his parole violated procedural due process.  ECF No. 1 at 18, ¶ 61.  In the petition, he applies the framework from Mathews v. Eldridge, 424 U.S.C. 319 (1976) ("Mathews") and insists its factors easily weigh in his favor.  Id., ¶¶ 61-64.  Respondents did not address the Mathews factors in their response.

The undersigned agrees with petitioner that Mathews governs his procedural due process claim.  "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others ... [thus it] must be seen within the protection of the [Fifth] Amendment."  Morrissey v. Brewer, 408 U.S. 471, 482-483 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'") (quoting Morrissey, 408 U.S. at 482).

Moreover, respondents acknowledge that this case is legally indistinguishable from

Chavarria.  There, District Judge Drozd collected cases and concluded that noncitizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release. Chavarria, 2025 WL 3533606, at *3.  The undersigned agrees and follows the many other judges in this district who have adopted Chavarria's reasoning and held that noncitizens granted parole under § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews. See, e.g., D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026); Torres-Zuluaga v. Wofford, et al., No. 1:26-cv-0318 DJC EFB, 2026 WL 184662, at *3 (E.D. Cal. Jan. 23, 2026); Florez v. Robbins, No. 1:25-cv-1897 CSK, 2025 WL 3718832, at *6 (E.D. Cal. Dec. 23, 2025).

### B.  Application of Mathews Factors

The undersigned proceeds to consider whether due process requires written notice and a pre-detention hearing before a neutral adjudicator.  Chavarria, 2025 WL 3533606, at *3.  The Mathews test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

Private Interest: Petitioner argues that he has a substantial liberty interest in "remaining on parole, rather than being detained." ECF No. 1 at 18, ¶ 62. The undersigned agrees.  "It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status.  Freedom from imprisonment is at the core of the Due Process Clause." Doe v. Becerra, 787 F.Supp.3d 1083, 1093 (E.D. Cal. 2025) (citing Zadvydas v. Davis, 533 U.S. 678 (2001)). The undersigned further agrees with petitioner that he has an added interest in remaining out of custody so he can work with his attorney to prepare his asylum cases.  See Mahender S.B. v. Chestnut, No. 1:26-cv-0326 TLN CKD, 2026 WL 124847, at *2 (E.D. Cal. Jan. 16, 2026) (finding the petitioner "has a clear interest in his continued freedom as he awaits the outcome of

5

his asylum proceedings"). Accordingly, this factor favors a finding that petitioner's private interest has been affected by his detention.

Erroneous Deprivation: The risk of erroneous deprivation is particularly high when, as is undisputed here, petitioner received no meaningful procedural safeguards. "Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing Zadvydas, 533 U.S. at 690-91). Here, petitioner's release on humanitarian parole necessarily required a finding that he posed neither "a security risk nor a risk of absconding." Chavarria, 2025 WL 3533606, at *3 (citing 8 C.F.R. § 212.5(b)). Respondents made no counterargument and did not put forward any evidence that the government reconsidered its determination at Petitioners' initial release that he did not pose a safety or flight risk.

Further, respondents did not comply with the statutory and regulatory rules for revoking humanitarian parole. Such revocations must occur on a case-by-case basis and only "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served[.]" 8 U.S.C. § 1182(d)(5)(A); Mata Velasquez v. Kurzdorfer, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) ("[B]oth common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole must attend to the reasons an individual [noncitizen] received parole.") (citation and quotations omitted). The parole regulations require a "written notice" that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). The government may forego written notice only upon the noncitizen's departure from the United States, or, if not departed, at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1). Neither condition for excusing written notice was met here. For all these reasons, the second Mathews factor also favors the petitioner.

Government's Interest: Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. While Respondents may have

some generalized interest in Petitioners' detention under any of the potentially applicable detention statutes, that interest dissipates when, as again is undisputed here, petitioner does not present a danger or risk of flight and has complied with all his check-in requirements.  The undersigned also joins other district courts in the Ninth Circuit finding that costs and administrative burdens associated with additional process in the context of parole revocations are low.  See Chavarria, 2025 WL 3533606, at *4 ("If respondents wish to re-detain petitioner, they need only provide him with written notice and a hearing before a neutral adjudicator."); Pinchi, 792 F. Supp. 3d at 1036 ("Indeed, it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").  Therefore, the third and final factor also weighs in favor of petitioner.

Accordingly, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondents be ordered to release petitioner immediately under the previously imposed conditions of supervision.  The undersigned further recommends that respondents be enjoined and restrained from re-detaining petitioner unless they provide him with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker.  At that hearing, respondents must demonstrate by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  Having found that the Fifth Amendment Due Process Clause supports the granting of the petition in this case, in the interests of judicial economy, the undersigned declines to reach petitioner's APA claim.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.     Respondents be required to immediately release Petitioners from detention under the previously imposed conditions of supervision.

3.     Respondents be enjoined and restrained from re-detaining petitioner unless they provide petitioner with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker, and demonstrate by clear and convincing evidence at such bond hearing that petitioner is a flight risk or danger to the community such that his physical custody is legally

justified.

4.      Respondents be ordered to file a notice certifying compliance with the above provisions within two (2) days of the adoption of these findings and recommendations.

5.      Judgement be entered in favor of the petitioner and the Clerk of the Court close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 5, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE